IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT ALLEN STANFORD, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:20-cv-00115-E-BT |
| | § | |
| DAVID C. GODBEY, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are separate motions to dismiss *pro se* Plaintiff Robert Stanford's Consolidated Complaint filed by each of the Defendants in this case: (1) Defendant Ralph Janvey's "Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6), 41(b), and the Court's Inherent Powers" (ECF No. 27); (2) Defendant Judge David C. Godbey's Rule 12(b)(5) and 12(b)(6) Motion to Dismiss (ECF No. 35); and (3) Defendant David Reece's Rule 12(b)(5) and 12(b)(6) Motion to Dismiss (ECF No. 43). For the following reasons, the District Court should GRANT Defendants' motions and DISMISS Plaintiff's claims against them with prejudice.

**Background**

The genesis of this lawsuit is a February 2009 SEC enforcement action filed in this district against Plaintiff Robert Stanford. Consolidated Compl. 4 (ECF No. 17); Reece Mot. 6; *see SEC v. Stanford Int'l Bank, Ltd., et al.*, No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"). In that case, the SEC alleged Stanford, together

with other defendants, "misappropriated billions of dollars in investor funds through a massive fraud scheme and falsified financial statements in an effort to conceal his fraudulent conduct." Reece Mot. 6. Defendant Judge Godbey presided over the SEC Action.

Stanford executed his scheme by misrepresenting to investors that Stanford International Bank, Ltd.'s ("SIBL") certificates of deposit were conservatively invested and offered higher returns than banks in the United States. *See United States v. Stanford*, 805 F.3d 557, 563-64 (5th Cir. 2015). Instead, Stanford diverted a substantial portion of the investors' funds "to finance his personal business ventures and opulent lifestyle." *Id.* at 564. In June 2009, Stanford was indicted in the Southern District of Texas on criminal charges arising out of the same conduct, and in 2012, he was "tried and convicted by a jury on numerous counts of wire and mail fraud, money laundering, conspiracy to obstruct an SEC investigation, and obstruction of an SEC investigation," for which he was sentenced to 110 years in prison. Reece Mot. 6; *see also Stanford*, 805 F.3d at 563-65.

Following Stanford's 2009 indictment, the court appointed Ralph S. Janvey as receiver of Stanford's estate. Janvey Mot. 6; *see also* SEC Action, Receivership Order (ECF No. 10). In the Receivership Order, the court enjoined Stanford from "filing or prosecuting any actions or proceedings which involve the Receiver . . . except with the permission of this Court." SEC Action, Receivership Order 8 (ECF No. 10). On January 23, 2018, Stanford filed suit against Janvey and his agents without obtaining leave of court, alleging that Janvey had "wrongfully obtained,

manipulated, and shared [SIBL] data, ultimately leading to Stanford's wrongful conviction." *Stanford v. Janvey, et al.*, No. 3:18-cv-00165-N-BQ, Order 5 (ECF No. 17) (the "2018 Case"). Judge Godbey also presided over the 2018 Case, and he dismissed Stanford's claims with prejudice because his suit violated the Receivership Order and was barred by judicial immunity. *Id.* 6-7. After noting that Stanford had filed over two dozen frivolous and duplicative motions in the SEC Action, Judge Godbey further granted Janvey's motion to declare Stanford a vexatious litigant and enjoined him from "filing any new lawsuit against the Parties or Receivership Professionals[, meaning any professional firm or individual retained to provide services to the Parties,] without first seeking and obtaining leave of Court." *Id.* 2, 4-5. Stanford appealed that order, and the Fifth Circuit dismissed his appeal for lack of prosecution because Stanford failed to timely pay the docketing fee. 2018 Case, Notice of Appeal (ECF No. 19); 2018 Case, Judgment (ECF No. 26).

On January 16, 2020, Stanford filed his original Complaint in this case against Judge Godbey seeking damages for an alleged civil-rights violation under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Original Compl. (ECF No. 3). Stanford then moved to add Defendant David B. Reece, the lead SEC counsel in the SEC Action, in his individual capacity. Mot. to Add Reece (ECF No. 4); Mot. to Convert Reece's Status from Official Capacity to Individual Capacity (ECF No. 8). Next, Stanford moved to add Janvey, the receiver of the Stanford estate, as a defendant. Mot. to Add Janvey (ECF No.

10). This Court granted Stanford's motions and ordered Plaintiff to file a consolidated Complaint. Order (ECF Nos. 9 & 16).

In his Consolidated Complaint, Stanford claims Judge Godbey, Janvey, and Reece "joined hands in a blatant act of tyranny" to violate his Fourth and Fifth Amendment rights, for which he seeks $18.5 billion in damages. Resp. Janvey 2 (ECF No. 29); Resp. Reece 5 (ECF No. 44); Consolidated Compl. 2-3. Specifically, Stanford claims (1) Janvey, as receiver, exceeded the scope of his authority in obtaining SIBL documents; (2) Reece, while acting as an agent of the SEC, lacked jurisdiction to pursue the SEC Action because the certificates of deposit sold by SIBL were not "securities" under the Securities Exchange Act of 1934; and (3) Judge Godbey "engaged in a non-judicial act" by impermissibly interpreting the certificates of deposit at issue as "securities" under the statute. Consolidated Compl. 4-7[1].

---

[1]    After Plaintiff filed two separate motions to join additional defendants, the Court in its February 19, 2020 order required "Plaintiff to file a consolidated Complaint, including all allegations he wishes to pursue against all Defendants." Order 3 (ECF No. 16). The Court explained that the "new, consolidated Complaint [would] take the place of any previous Complaint," meaning that "prior allegations not contained within the new Complaint [would] be considered abandoned." *Id.* Plaintiff filed his Consolidated Complaint on February 26, 2020. Thereafter, on March 12 and March 16, Plaintiff filed two documents, both titled "Plaintiff's Supplement to Consolidated Complaint." (ECF Nos. 21 & 24). Though titled "supplements," these documents  appear to be complete pleadings.

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2). The Court determines Plaintiff's motions for leave to join additional defendants, which included allegations against those defendants now contained in the Consolidated Complaint, to constitute Plaintiff's "one" amendment as a matter of course. Plaintiff did not seek leave to file either "supplement." Therefore, they are not properly before the Court, and the Court considers Plaintiff's Consolidated Complaint to be his live pleading.

In response to Stanford's Consolidated Complaint, Defendants filed separate motions to dismiss, asserting numerous bases for dismissal, including various immunities, failure to state a claim, res judicata, and insufficient service of process. Janvey Mot.; Godbey Mot.; Reece Mot. The motions are fully briefed and ripe for determination.

## Legal Standard and Analysis

The Court first addresses Defendant Janvey and Reece's argument under Rule 41(b)[2] before addressing Defendants' Rule 12(b)(6) arguments.

## 41(b)

Defendants Janvey and Reece argue that Plaintiff's Consolidated Complaint should be dismissed because Plaintiff violated the Receivership Order and the 2018 Case's injunction by filing this action against them without court approval. Janvey Mot. 11-13; Reece Mot. 12. However, Plaintiff does not address this argument in his responses. *See* Resp. Janvey (ECF No. 29); Resp. Reece (ECF No. 44). The Court finds Plaintiff's claims against Defendants Janvey and Reece should be dismissed with prejudice under Rule 41(b).

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Additionally, a trial

---

[2] Though Reece does not specifically mention Rule 41(b), he argues "in May 2018, Stanford was declared a vexatious litigant and ordered to seek and obtain leave of Court prior to suing the SEC—including an individual retained to provide services to the SEC, such as Reece. He failed to do so. Because he violated the injunction prohibiting him from bringing this lawsuit, the Court should dismiss the lawsuit on that basis alone." Reece Mot. 12.

court has discretionary authority to dismiss an action *sua sponte* for a plaintiff's failure to prosecute or comply with any order of the court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962); *Gates v. Strain*, 885 F.3d 874, 883 (5th Cir. 2018) (citations omitted). "This authority [under Rule 41(b)] flows from the court's inherent power to control its docket and prevent undue delays in the disposition of pending cases." *Boudwin v. Graystone Ins. Co., Ltd.*, 756 F.2d 399, 401 (5th Cir. 1985) (citing *Link*, 370 U.S. at 630-31); *see also Beard v. Experian Info. Sols. Inc.*, 214 F. App'x 459, 462 (5th Cir. 2007) (per curiam) (citing Fed. R. Civ. P. 41(b); *Lopez v. Aransas Cnty. Indep. Sch. Dist.,* 570 F.2d 541, 544 (5th Cir. 1978) (noting that "[a]lthough the rule is phrased in terms of dismissal on the motion of the defendant, it is clear that the power is inherent in the court and may be exercised sua sponte")). While "[l]esser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice," dismissal with prejudice is appropriate where "there is a 'clear record of delay or contumacious conduct by the plaintiff, . . . and when lesser sanctions would not serve the best interests of justice.'" *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (per curiam) (first citing *Long v. Simmons,* 77 F.3d 878, 880 (5th Cir. 1996), then quoting *Callip v. Harris Cnty. Child Welfare Dep't,* 757 F.2d 1513, 1521 (5th Cir. 1985) (per curiam)).

    As stated, the Receivership Order prohibited Stanford from "filing or prosecuting any actions or proceedings which involve the Receiver [Janvey] . . . except with the permission of this Court." SEC Action, Receivership Order 7-8

(ECF No. 10). And Judge Godbey dismissed with prejudice the 2018 Case that Plaintiff filed against Janvey and his agents without leave of court because the suit violated the Receivership Order and was barred by judicial immunity. 2018 Case, Order 5-7 (ECF No. 17). The court's order in the 2018 Case prohibits Plaintiff from "filing any new lawsuit against the Parties [Janvey, Little, the SEC, and the Official Stanford Investors Committee] or Receivership Professionals[, defined as any professional firm or individual retained to provide services to the Parties,] without first seeking and obtaining leave of Court." *Id.* 1-2, 4-5. That order also "directs the Clerk of the Court not to accept for filing any such new complaint that Stanford files unless Stanford has obtained leave of Court for such filing." *Id.* 5. Here, Plaintiff did not seek permission from the Court to file a new lawsuit against Janvey, a former party, or Reece, counsel to a former party. Instead, he filed suit against Judge Godbey, the presiding judge in the SEC Action and the 2018 Case, and later moved to add Defendants Janvey and Reece in a deceitful attempt to circumvent the court's order prohibiting him from filing suit against the SEC Action parties or professionals providing services to those parties without leave of court. Mot. to Add Reece; Mot. to Add Janvey. In Plaintiff's motions for leave to join Janvey and Reece, he did not reference the 2018 Case's injunction. Accordingly, Plaintiff's claims against Janvey, the receiver, and Reece, the SEC's counsel in the SEC Action, should be dismissed with prejudice under Rule 41(b) for failure to comply with the court's order in the 2018 Case.

However, even if the District Court determines Plaintiff's motions for leave to join Janvey and Reece sufficiently satisfy the 2018 Case's injunction requiring Plaintiff to obtain leave before filing suit against the SEC Action parties and professionals serving those parties, Plaintiff's claims against all three Defendants should be dismissed with prejudice under Rule 12(b)(6).

### 12(b)(6)

When deciding a Rule 12(b)(6) motion for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendants' motions, therefore, Plaintiff's Consolidated Complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that a plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim.*" Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### i. Doctrines of Immunity

The Fifth Circuit has made clear that questions of immunity are a threshold matter "to be resolved as early in the proceedings as possible." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) (per curiam) (citing *Siegert v. Gilley,* 500 U.S. 226, 231-33 (1991) ("One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.")); *see also Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995) (per curiam) (citing *Boyd*, 31 F.3d at 284); *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001) (citing *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir. 1995*); Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir. 1993)). This is because absolute and qualified immunity provide immunity not only from

damages but from suit itself. *See Boyd*, 31 F.3d at 284; *Brown*, 243 F.3d at 191. Accordingly, the Court first addresses the issues of immunity.

## A. Judicial and Sovereign Immunity

Plaintiff brings *Bivens* claims against Judge Godbey and Janvey asserting that his "federally protected rights under the U.S. Constitution" were violated when Judge Godbey engaged in the allegedly nonjudicial act of impermissibly interpreting "securities" under 15 U.S.C. § 78c(a)(10) to include Plaintiff's certificates of deposit in the SEC Action and when Janvey "unlawfully accessed and disclosed" SIBL's customer account information. Consolidated Compl. 3, 6-8; Godbey Mot. 6; Janvey Mot. 10. Judge Godbey and Janvey assert that absolute judicial immunity bars Plaintiff's claims against them. Godbey Mot. 7; Janvey Mot. 18-19. The Court agrees.

Judges have absolute immunity for judicial actions taken within the scope of their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978); *Mays v. Sudderth*, 97 F.3d 107, 110-11 (5th Cir. 1996) (citations omitted). Absolute judicial immunity does not apply in two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," and (2) "a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (per curiam) (citing *Forrester v. White,* 484 U.S. 219, 227-29 (1988); *Stump,* 435 U.S. at 360, 356-57; *Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871)). In

determining whether a judge's actions were "judicial in nature," a court must consider four factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)). Concerning the first factor, "the relevant inquiry is the 'nature and function' of the act, not the 'act itself'"; "[i]n other words," the Court must "look to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 13 (citing *Stump*, 435 U.S. at 362).

While Plaintiff filed a "Motion to Convert Added Defendant Reeces' [sic] Status from Official Capacity to Individual Capacity" (ECF No. 8), evidencing his intent to sue Reece in his individual capacity, Plaintiff does not expressly state whether he intends to sue Judge Godbey in his official or individual capacity. However, by bringing a *Bivens* claim against him, Plaintiff necessarily sues Judge Godbey in his individual capacity. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001) (observing that *Bivens* provides a cause of action only against government officers in their individual capacities); *see also Jones v. Reich*, 1997 WL 376053, at *2 (N.D. Tex. June 30, 1997) (Fitzwater, J.) (citing *FDIC v. Meyer,* 510 U.S. 471, 484-86 (1994)) ("*Bivens* does not permit suit against federal agencies or government officers in their official capacities.").

Judge Godbey is absolutely immune from Plaintiff's claim against him. Though the Fifth Circuit has "not yet determined whether federal judges . . . named as defendants in *Bivens* actions enjoy absolute immunity against claims seeking injunctive relief," *Collie v. Kendall*, 220 F.3d 585, 585 (5th Cir. 2000) (per curiam); *accord Edmonson v. Lee*, 2008 WL 2080912, at *2 (S.D. Miss. May 9, 2008) (citations omitted) ("Neither the Supreme Court nor the Fifth Circuit Court of Appeals, however, have discussed whether federal judges enjoy immunity from equitable or injunctive relief in the context of a *Bivens* claim."); *but see Butcher v. Guthrie*, 332 F. App'x 161, 162 (5th Cir. 2009) (per curiam) (holding without reference to injunctive relief that "the defendant judges were immune under *Bivens* because their handling of Butcher's earlier lawsuit was a judicial act 'not performed in the clear absence of all jurisdiction'"), "district courts within this circuit have found that judicial immunity bars both declaratory and equitable relief in the context of a *Bivens* action." *McCarrell v. Davis*, 2017 WL 11221248, at *3 (W.D. Tex. July 31, 2017), *adopted by* 2017 WL 11221249 (W.D. Tex. Aug. 25, 2017) (citing *Wrightman v. Jones*, 809 F. Supp. 474, 479 (N.D. Tex. 1992); *Evans v. Suter*, 2007 WL 1888308, at *3 (S.D. Tex. June 29, 2007) (Rosenthal, J.)). And "[i]t has long been settled that judicial defendants are absolutely immune from suit for monetary damages." *Edmonson*, 2008 WL 2080912, at *2 (citing *Stump,* 435 U.S. at 356-57). Here, Plaintiff's Consolidated Complaint requests "compensatory damages from the Defendants, severally, in the amount of $18.5 billion," not injunctive relief. Consolidated Compl. 3. Therefore, unless Judge Godbey acted

nonjudicially or the Court did not have jurisdiction, he is entitled to absolute immunity. *See Mireles*, 502 U.S. at 11-12 (citations omitted) (explaining that absolute judicial immunity does not a apply when (1) a judge acted nonjudicially, or (2) a judge acted judicially but lacked jurisdiction).

Judge Godbey's statutory interpretation in the SEC Action, the conduct Plaintiff complains of, constitutes a judicial action. Specifically, Plaintiff argues Judge Godbey improperly interpreted the term "security" under 15 U.S.C. § 78c(a)(10) in footnote two of his November 30, 2011 order. Consolidated Compl. 7; SEC Action, Order 5 n.2 (ECF No. 1483). Interpreting a statute within an order on a motion to dismiss is a normal judicial function; this act centered around a pending case, arose directly out of a motion filed with the court, and likely occurred within Judge Godbey's chambers. *See Ballard*, 413 F.3d at 515 (quoting *Malina,* 994 F.2d at 1124) (setting forth the four factors courts must consider to determine with a judge's actions were judicial: "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity").

And though Plaintiff argues that the court did not have "statutory subject-matter jurisdiction" because "the 'debt asset-CDs' sold by SIBL in Antigua were not 'securities' as defined by, and thus subject to, federal securities laws," Consolidated Compl. 7, the Fifth Circuit has held, as Judge Godbey's order stated,

"that a question of whether certain transactions are securities within the meaning of the federal securities laws should not be determined on a motion to dismiss for lack of subject matter jurisdiction unless the complaint fails to meet the standards of *Bell v. Hood*[, 327 U.S. 678, 682-83 (1946)]." *Meason v. Bank of Miami*, 652 F.2d 542, 547 (5th Cir. Unit B Aug. 1981) (citations omitted); *see also* SEC Action, Order 2 (ECF No. 1483). And under *Bell v. Hood* "a complaint should not be dismissed for lack of subject matter jurisdiction unless the federal claim is 'immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Meason*, 652 F.2d at 546 (quoting *Bell*, 327 U.S. at 682-83); *see also* SEC Action, Order 2 (ECF No. 1483). In his November 30, 2011 order, Judge Godbey found "the SEC's claims meet the *Bell v. Hood* standard," because "[t]hey are not immaterial and made solely for the purpose of obtaining federal jurisdiction and are not wholly insubstantial and frivolous." SEC Action, Order 3 (ECF No. 1483). Accordingly, the Court finds Judge Godbey acted judicially and with jurisdiction. Therefore, he is absolutely immune from Plaintiff's claim, and the District Court should dismiss Plaintiff's claim against him with prejudice.

Similarly, Janvey, as the court-appointed receiver in the SEC Action, qualifies for derivative judicial immunity from Stanford's claim against him. "Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver."

14

*Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (collecting cases)). Here, Plaintiff contends Janvey "acted outside the scope of his Order Appointing Receiver and unlawfully obtained [SIBL's privacy law-protected customer account information]" and disclosed it to the SEC. Consolidated Compl. 6; Resp. Janvey 4. But Janvey's conduct in obtaining that information and disclosing it to the SEC was properly within the scope of his court-appointed duties.

Specifically, Judge Godbey granted Janvey "full power to . . . take possession of without limitation, all . . . books and records, . . . including computer maintained information, . . . financial records, . . . and other papers and documents of other individuals, partnerships, or corporations whose interests are now held by or under the direction . . . of the Receivership Estate." SEC Action, Second Am. Order Appointing Receiver 4-5 (ECF No. 1130). And Judge Godbey specifically directed Janvey to "[p]romptly provide the Commission and other governmental agencies with all information and documentation they may seek in connection with [their] regulatory or investigatory activities." *Id.* 7; *see also* 2018 Case, Order 6-7 (ECF No. 17) (finding Janvey acted within the scope of his court-appointed duties and enjoyed judicial immunity barring Stanford's claims against him). Thus, because Janvey acted within the scope of his authority as defined by the order appointing him as receiver, and no evidence indicates he exceeded that authority, he is entitled to judicial immunity from Plaintiff's claim against him. *See Davis*, 70 F.3d at 374 (citation omitted) ("Because court orders expressly authorized [the receiver] to enter the storage unit, she was acting within the scope of her authority as to that

search."); *Stanford*, 805 F.3d at 568 ("There is no evidence that the receiver performed any functions other than those necessary to manage Stanford's failed financial institutions."). Accordingly, the District Court should dismiss Plaintiff's claim against Janvey with prejudice.

## B. Qualified Immunity

Plaintiff also brings a *Bivens* claim against Reece for violating his "federally protected rights under the U.S. Constitution" when he represented the SEC in the SEC Action because the SEC lacked enforcement authority over him since SIBL's certificates of deposit were not "securities" under 15 U.S.C. § 78c(a)(10). Consolidated Compl. 3-6; Reece Mot. 12. Reece asserts that Plaintiff's claim against him should be dismissed because he is entitled to qualified immunity. Reece Mot. 19. Again, the Court agrees.

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (Scalia, J.)). "Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful

conduct violated clearly established law.'" *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (Haynes, J.)).

The Court must determine whether the plaintiff has alleged a violation of a constitutional right and whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (citations omitted). The Court may evaluate either step first. *Id.* at 236. If a plaintiff does not state a claim that a defendant violated clearly established law, then "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted); *see also Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019) (citations omitted) ("When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an 'obligation . . . to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'").

To determine whether a right is "clearly established" for the purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (Scalia, J.). This does not require a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citations omitted); *see also Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir.

2018) (finding defendants were entitled to qualified immunity because the plaintiff had "not carried her burden of pointing this panel to any case that shows, in light of the specific context of this case, that the [defendants'] conduct violated clearly established law").

Here, Plaintiff pleads that "Reece . . . was undeniably aware at the time, that the [SEC] enforcement action he was initiating was not authorized by statute, and therefore was . . . filed in violation of the laws of the United States and U.S. Constitution" because SIBL's certificates of deposit are not "securities" within the meaning of 15 U.S.C. § 78c(a)(10). Consolidated Compl. 5. Though Plaintiff's Consolidated Complaint does not identify any particular right that Reece's conduct violated, his response to Reece's motion asserts Reece's participation in the SEC Action violated his "rights under both the Fourth Amendment, as well as the inextricably-linked 'due process of law' rights as guaranteed by the Fifth Amendment." Resp. Reece 5. Plaintiff has not plausibly pleaded a violation of his Fourth or Fifth Amendment rights.

In particular, Plaintiff has not alleged a Fourth Amendment violation for an improper search or seizure. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (Roberts, C.J.) (citation omitted) (quoting U.S. Const. amend. IV). But Plaintiff's claim against Reece, "CLAIM ONE," makes no mention of an improper search or seizure. Consolidated Compl. 4-5. Rather, Plaintiff alleges the SEC lacked

statutory authority in pursuing the SEC Action. *Id.* Plaintiff only mentions "unauthorized access and disclosure" with respect to Janvey, who is immune from Plaintiff's claim for the reasons discussed above. *Id.* 6. Because Plaintiff has failed to plead Reece engaged in any improper search or seizure, he has not alleged Reece violated his Fourth Amendment rights.

Plaintiff also has not alleged a Fifth Amendment due-process violation. The relevant portion of the Fifth Amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . , nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V; *see also Hernandez v. United States*, 757 F.3d 249, 267 (5th Cir. 2014) (Prado, J.) (quoting Fifth Amendment's due-process clause). "This constitutional protection contains both a substantive and a procedural component." *Hernandez*, 757 F.3d at 267. "The substantive component prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty, whereas the procedural component ensures that any government action surviving substantive due process scrutiny is implemented in a fair manner." *Id.* (internal quotation marks omitted) (quoting *United States v. Salerno,* 481 U.S. 739, 746 (1987)).

Plaintiff does not state whether he asserts a claim for substantive or procedural due process. "However, '[w]hen a provision of the Constitution provides an explicit textual source of protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized rubric of

substantive due process.'" *Lopez-Flores v. Ibarra*, 2018 WL 6579180, at *12 (S.D. Tex. Jan. 22, 2018) (quoting *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 440 (E.D.N.Y. 2006) (citing *Conn v. Gabbert*, 526 U.S. 286, 293 (1999))). Here, any substantive due-process claim "would arise from the same conduct by [Reece], and seek a remedy for the same injuries, as Plaintiff['s] . . . Fifth Amendment procedural due process claim[ ]." *Id.* (quotation marks omitted) (quoting *Lonegan*, 436 F. Supp. 2d at 440). Accordingly, the Court only considers whether Plaintiff has plausibly pleaded a procedural due-process violation.

"To state a claim under the Due Process Clause, Plaintiff 'must first identify a life, liberty, or property interest protected by the" Fifth Amendment,[3] "and then identify a [federal] action that resulted in a deprivation of that interest." *Poloceno v. Dall. Indep. Sch. Dist.*, 2019 WL 2568681, at *3 (N.D. Tex. June 21, 2019) (Scholer, J.) (internal quotation marks omitted) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)), *aff'd*, 826 F. App'x 359 (5th Cir. 2020). "The fundamental requirement of due process is the opportunity to be heard 'at a

---

[3]Though the original citation reads "a life, liberty, or property interest protected by the *Fourteenth* Amendment and then identify a *state* action," *Poloceno*, 2019 WL 2568681, at *3 (emphasis added), "[t]he 14th Amendment, it has been held, legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation affecting life, liberty, and property as is offered by the 5th Amendment against similar legislation by Congress." *Hibben v. Smith*, 191 U.S. 310, 325 (1903) (Peckham, J.); *accord McGraw v. Heaton*, 2017 WL 1157221, at *4 (N.D. Tex. Mar. 9, 2017), *adopted by* 2017 WL 1155831 (N.D. Tex. Mar. 27, 2017); *Robinson v. Huerta*, 123 F. Supp. 3d 30, 42 n.9 (D.D.C. 2015). Thus, the requirements of the Fourteenth and Fifth Amendment due-process clauses are functionally identical except that Fifth Amendment due process applies to federal actors. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (citations omitted).

Here, Plaintiff appears to contend that Reece violated his Fifth Amendment right to procedural due process by knowingly pursuing an allegedly illegal SEC enforcement action against him. Consolidated Compl. 5-6; Resp. Reece 5 ("[This] is a case where the conduct alleged as to each defendant, was intententional [sic] and calculated to circumvent and overcome, clearly established statutory and constitutional law—all in knowing violation and deprivation, of the plaintiff's federally protected rights under both the Fourth Amendment, as well as the inextricably-linked 'due process of law' rights as guaranteed by the Fifth Amendment."). However, Plaintiff does not specifically allege that Reece, individually, deprived him of any particular life, liberty, or property interest, nor does he plead how Reece's actions deprived him of notice or an opportunity to be heard. *See* Consolidated Compl. Rather, he asserts that Reece proceeded on behalf of the SEC in the SEC Action "without lawful authority and federal jurisdiction." Consolidated Compl. 6. Therefore, Plaintiff has not stated a Fifth Amendment procedural due-process claim against Reece.

Because Plaintiff has not stated a claim that Reece violated his constitutional rights and has failed to overcome the first qualified-immunity prong, the Court need not address whether those rights were clearly established at the time of the alleged misconduct. Accordingly, Reece is entitled to qualified immunity, and Plaintiff's claim against him should be dismissed with prejudice.

Further, because the Court concludes that Defendants Janvey and Judge Godbey are entitled to judicial immunity and that Defendant Reece is entitled to qualified immunity, the Court pretermits consideration of Defendants' additional arguments for dismissal under 12(b)(6), including whether Plaintiff's claims are appropriate under *Bivens* or barred by claim or issue preclusion, and 12(b)(5).

**<u>RECOMMENDATION</u>**

For the reasons stated, the District Court should GRANT Defendants Judge Godbey, Reece, and Janvey's motions to dismiss (ECF Nos. 27, 35, and 43) and DISMISS with prejudice all of Plaintiff Robert Stanford's claims against them.

**SO RECOMMENDED.**

December 10, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).